Johnson, J.,
concurring in part, dissenting in part: I agree with the majority's determination that the legislature s latest changes to the local option budget supplemental general state aid program (hereafter referred to as LOB) did not cure the inequities which this court confirmed were unconstitutional in March of 2014 and reaffirmed as unconstitutional in February 2016.
But I continue to believe that this court should join with the district court panel to affirmatively remedy the unconstitutionality, rather than continuing to merely offer the functional equivalent of declaratory judgments. See Gannon v. State, 303 Kan. 682, 746, 368 P.3d 1024 (2016) (Johnson, J., concurring in part, dissenting in part) (opining that this court should lift the stay on the district courts remedial orders). If this court had not issued a stay on the district courts remedial orders on June 30, 2015, the public educational system in Kansas would have avoided yet another year of unconstitutional inequity. In my view, maintaining the integrity of our state constitution and providing equitable educational opportunities for our children are too important for this court to be constrained by any concern that the legislature will be offended that we told it how to do its job. After all, this court has its own job to do, as well.
Specifically, I would lift the stay on those district court remedial orders that require the legislature to fully fund the LOB as it ex *529 isted before the institution of this lawsuit. Although the majority leaves open the possibility of lifting the stay on the district courts remedial orders on July 1, 2016,1 would dp it now. The legislature has had more than enough opportunities to resolve this unconstitutionality on its own terms.
I acknowledge the State’s complaint that such an order would violate the separation of powers by encroaching upon the legislative branch’s constitutional authority to appropriate money, pursuant to Article 2 of the Kansas Constitution. But tire legislature has repeatedly failed or refused to exercise its Article 2 constitutional authority to fulfill its Article 6 constitutional responsibility with respect to the educational interests of this state. By allowing the legislature to close the schools and shut off all monies to all the public schools through the simple tack of taking no action to fix the unconstitutional inequities, this court would be enabling the legislature’s dereliction of constitutional duty. Moreover, I fear that some might view the closure of all public schools as a victory.
As a practical matter, a remedial order to fully fund tire original LOB program, i.e., requiring the legislature to use the “safe harbor” this court proffered 2 years ago, would be far less draconian than the State’s suggestion that we sever the entire LOB program, thereby denying the schools approximately $1 billion, or about 25% of the total educational budget. And, after all, as the State’s attorney repeatedly asserted at oral arguments: “It’s only for 1 year.”